## GENERAL RELEASE AND SETTLEMENT AGREEMENT

This General Release and Settlement Agreement ("Agreement") is made between GISNET THIMOGENE ("Plaintiff") on one hand, and JC BAKESHOP, INC. ("JC") and SHELLY A. POWERS ("Powers") on the other hand. JC and Powers are collectively referred to as "Defendants". Plaintiff and Defendants are collectively referred to herein as the "Parties".

WHEREAS, Plaintiff filed a Complaint against the Defendants in the United States District Court for the Southern District of Florida, Miami Division, bearing Case Number 1:20-cv- 22182 ("Lawsuit") and included claims under the Fair Labor Standards Act ("F.L.S.A.").

WHEREAS, the Parties participated in good faith settlement communications through their respective counsel, which resulted in a settlement as memorialized herein; and,

WHEREAS, the Defendants deny all wrongdoing and deny Plaintiff's' claims. The Defendants have agreed to settle this dispute with Plaintiff in order to avoid the inherent costs, burdens, and uncertainties associated with protracted litigation and to be able to focus their efforts and time on restoring and rebuilding their business from the results of the COVID-19 pandemic; and,

WHEREAS, JC has suffered significant financial hardship and uncertainty as a result of the ongoing COVID-19 pandemic, which is a factor that was considered by all Parties in connection with this settlement; and,

WHEREAS, "Defendants" shall include their respective past and present incorporators, Board of Directors, officers, owners, members, servants, agents, insurers, investors, attorneys, employees, representatives, successors, assigns, heirs, estates, partners associates, affiliates, and all current, past and future subsidiaries, parents, related and affiliated corporations, sister

1

corporations, and divisions, and all persons or entities affiliated in any manner with any Defendant alleged heretofore or hereafter to be a statutory employer under the F.L.S.A. of Plaintiff; and,

WHEREAS, "Plaintiff" shall include his respective successors, administrators, agents, estates, assigns and attorneys, any other parties of interest and/or representatives; and,

WHEREAS, this General Release and Settlement Agreement between Plaintiff and Defendants is hereinafter referred to as the "Release," the "Agreement," or the "Settlement Agreement."

NOW, THEREFORE, in consideration of the covenants contained herein, the payment from and on behalf of Defendants to Plaintiff, and other valuable consideration, the receipt of which is hereby acknowledged, the parties hereto agree as follows:

1. The foregoing recitals are true and correct.

2. **Plaintiff's Release:** The Plaintiff hereby irrevocably and unconditionally releases, acquits, remises, and forever discharges each of the Defendants and all included entities listed above from any and all rights, obligations, liens, claims, damages, demands, relief, liabilities, equities, actions and causes of action of whatever kind and character, in law or in equity, in contract or tort or public policy, both known and unknown, suspected or unsuspected, disclosed and undisclosed, actual and consequential, specific and general, however denominated (including, but not limited to, those arising out of, or in any way connected with, the work relationship of Plaintiff with Defendants in any position at any time, and including, but not limited to, all claims raised in the Lawsuit), for wages, bonuses, overtime pay, front or back pay, minimum wage, income from any source, declaratory or injunctive relief, lost benefits,

commission, liquidated damages, compensatory or punitive damages, money, remuneration, attorneys' fees, costs, expert's fees and costs, expenses, or thing of value whatsoever, by Plaintiff and against Defendants, including, but not limited to, claims arising under or relating to:

A. The Fair Labor Standards Act, 29 U.S.C. §§ 201, 206 and 207, *et seq.*

B. 29 U.S.C. Section 207(i)

C. Article X § 24, Florida Constitution, Florida Minimum Wage Amendment;

D. The Florida Minimum Wage Act ("FMWA")

E. Florida Statute § 440.205;

F. The Florida Human Rights Act and the Florida Civil Rights Act of 1992 codified in Chapter 760 of the Florida Statutes;

G. The Labor Management Relations Act of 1947;

H. The Equal Pay Act of 1963;

I. The Occupational Safety and Health Act of 1970;

J. The Rehabilitation Act of 1973;

K. The Health Maintenance Organization Act of 1973;

L. The Immigration Reform and Control Act of 1986;

M. The Family and Medical Leave Act of 1993 ("FMLA");

N. Executive Orders 11141, 11246, and 11375;

O. 42 U.S.C. § 1981, § 1982, § 1983, § 1985, or § 2000;

P. The Americans with Disabilities Act ("ADA"), as amended;

Q. The Consolidated Omnibus Reconciliation Act ("COBRA");

R. The Employee Retirement Income Security Act of 1974 ("ERISA");

S.   The Civil Rights Acts of 1866, 1871, 1964 (including Title VII of that Act), or 1991;

T.   The Internal Revenue Service Code;

U.   Chapter 448, Florida Statutes;

V.   Chapter 440, Florida Statutes;

W.   The Age Discrimination in Employment Act ("ADEA") and the Older Workers Benefit Protection Act of 1990 ("OWBPA");

X.   Any claim for defamation, libel, or slander;

Y.   Any federal, state or local laws prohibiting employment discrimination;

Z.   And all other claims under federal, state of local statute, administrative code, or ordinance or common law, including but not limited to those relating to discrimination or retaliation in employment.

The listing of specific types of claims as set forth above is not intended to limit in any way the general and comprehensive scope of this Release from Plaintiff to the Defendants, except that Plaintiff's worker's compensation case, Gisnet Thimogene v. JC Bakeshop, Inc. and Amtrust North America (OJCC #20-009707SMS; date of accident: April 12, 2019), is explicitly not encompassed or included within this Release. Plaintiff further agrees that it is his express intent to enter into this full and final settlement and compromise of any and all claims against Defendants, whatsoever, including, but not limited to, those arising out of, or in any way connected with, the employment of Plaintiff, at any time, from the beginning of the world to the date of execution by Plaintiff of this Agreement. Nothing in this Agreement precludes Plaintiff from filing a charge with, or testifying, assisting, or participating in any investigation, hearing or

proceeding conducted by the Equal Employment Opportunity Commission or equivalent state or local agency. However, Plaintiff agrees to waive his right to monetary or other equitable relief should he file an administrative charge or any claim be pursued by any person, organization or other entity against the Defendants on his behalf arising out of or related to his employment with or separation from the Defendants. Plaintiff recognizes that no suit can be filed against Defendants for any claim released as part of this Agreement.

Except for enforcement of this Agreement, if Plaintiff should later initiate or participate in any legal action or proceeding against Defendants, for any claim arising or accruing before and through the effective date of this agreement, this Agreement will be conclusive evidence that any such claims have been released.

3. **Settlement Payment.** As settlement for all of Plaintiff's claims against Defendants (except for the aforementioned workers' compensation case) including, but not limited to, those asserted in the Lawsuit, and in exchange for a general release, payment ("Settlement Payment") as allocated below:

(a) $7,000.00 net payable directly to Plaintiff **after taxes and withholdings payable by Defendants**, apportioned as follows:

    i.    Unpaid wages: $3,500.00

    ii.    Liquidated damages: $3,500.00

(b) $3,000.00 payable to Plaintiff's counsel at Jeffrey P. Gale, P.A., apportioned as follows:

    i.    Attorney's fee: $2,500.00

    ii.    Costs: $500.00

Attorney Jeffrey P. Gale's Verified Statement, with associated time log and cost statement, is attached hereto.

The Settlement Payment must be received by Plaintiff's counsel within 20 days from the date the Court issues its Order approving the settlement of the Lawsuit in accordance with this Agreement (and receipt of all signed Form 1099). Plaintiff understands and agrees that the Settlement Payment is in full and final satisfaction of any claim for attorneys' fees or costs arising out of or relating to the Lawsuit, and the Defendants are not responsible for allocating the Settlement Payment to the Plaintiff.

Plaintiff warrants and represents that they have not assigned, pledged or hypothecated in whole or in part any claim released herein.

4. **Dismissal With Prejudice.** Plaintiff shall ensure the Lawsuit is dismissed with prejudice against Defendants within 10 days of receipt of the Settlement Payment. The Parties agree they will work together in good faith to accomplish the Court approval of all terms of this Settlement Agreement

5. **Resignation and Waiver of Re-instatement/ Re-Application.** Plaintiff agrees and recognizes that his relationship with Defendants has been permanently and irrevocably dissolved. Plaintiff expressly waives any application and/or claim of right to independent contractor or employment status with any of the Defendants, whatsoever, and agrees that he will not now and will not in the future seek employment or independent contractor or consultant status with any of the Defendants. Plaintiff further agrees that this Agreement is good and sufficient cause for Defendants, individually or collectively, to reject any such application for employment or independent contractor or consultant work. In the event the Plaintiff inadvertently becomes employed or contracted by Defendants or any entity affiliated with Defendants, Plaintiff agrees

that, upon learning of such inadvertence, he will immediately resign or terminate such work or relationship, consistent with the terms of this Agreement.

6. **Not an Admission of Liability.** It is understood, agreed and stipulated between the parties that the consideration described herein is in complete and full accord, satisfaction and discharge of disputed claims, and that Defendants do not in any manner by virtue of this Agreement, or payment of the consideration therefore, admit liability to anyone as a result of any incident, act or omission described in or cognizable by the aforementioned claims, charges or causes of action, and it is recognized that Defendants denied and continue to deny all such allegations.

7. **Complete Agreement and Consultation with Counsel.** This Agreement contains the entire agreement, understanding and stipulation between the parties hereto. The Parties to this Agreement acknowledge that they have had full possession of any and all facts with regard to their claims or rights, and that they have consulted with their counsel. The terms of this Agreement are contractual, not mere recitals, and may be enforced in Court.

8. Each of the Parties warrants to each other that each has full power, authority and capacity to execute this Agreement. The Parties represent to each other that the effect of this Agreement has been fully explained to each of them and the Agreement is understood and agreed to by them.

9. This Agreement is deemed to have been drafted jointly by the Parties. Any uncertainty or ambiguity shall not be construed for or against any other party based on attribution of drafting to any party. The terms of this Agreement are executed without reliance upon any representations except those contained herein, and the parties have carefully read this General Release and Settlement Agreement and sign the same of their own free will.

10.     Should any provision of this Agreement be declared or be determined by any Court to be illegal or invalid, the validity of the remaining parts, terms, or provisions shall not be affected thereby, and said illegal or invalid part, term or provision shall be deemed not to be a part of this Agreement.

11.     This Agreement is made and entered into in the State of Florida, and shall in all respects be interpreted, enforced and governed under the laws of the State of Florida, and shall be subject to the exclusive jurisdiction of the Courts located in Miami-Dade County, Florida. All parts of this Agreement shall in all cases be construed as a whole according to its fair meaning, and not strictly for or against any of the parties herein. The parties expressly waive their right to a trial by jury in the event of any dispute regarding the enforcement or construction of this Agreement. Should any Party to this Agreement be required to enforce the terms of this agreement against a breaching Party, upon a proven breach, the prevailing party shall be entitled to her/his/its reasonable attorneys' fees and costs.

12.     **Amendment.** This Agreement may not be modified, altered or changed except upon express written consent of both parties wherein specific reference is made to this Agreement

13.     **Successors and Assigns.** This Agreement shall be binding upon the parties hereto and upon their heirs, administrators, representatives, executors, divisions, parents, subsidiaries, parents' subsidiaries, affiliates, partners, limited partners, successors and assigns, and shall inure to the benefit of said parties and each of them and to their heirs, administrators, representatives, executors, divisions, parents, subsidiaries, parents' subsidiaries, affiliates, partners, limited partners, successors and assigns.

14.     **Confidentiality and Non-Disparagement.** Plaintiff shall not disclose,

communicate, make public or publicize in any manner any problems, issues or concerns they perceive thathe may have had with the any of the Defendants, their shareholders, affiliates, attorneys, employees (past or present) or give any information or make any statements which might tend to impugn, disparage, defame, discredit or detract from the other party, their shareholders, affiliates, attorneys, employees (past or present). Such communication includes all social media, including, but not limited to, Facebook, blogs, twitter, Instagram, or similar social media platforms. The Parties acknowledge and agree that this prohibition extends to statements, written or oral, made to anyone, including, but not limited to, the news media, social media, any board of directors or advisory board of directors, competitors, strategic partners, vendors, and employees (past and present). Plaintiff shall not interfere with Defendants' relationships with any person who is an employee or independent contractor of any Defendant or the Defendants collectively.

This Agreement is also STRICTLY CONFIDENTIAL unless ordered contrary by the Court overseeing the Lawsuit. Plaintiff and his counsel and Defendants and their counsel shall and must jointly seek approval of this settlement from the Court upon *in camera* inspection without this settlement becoming part of the public record. Plaintiff and his counsel each agree that they will not disclose, publicize, or discuss any of the terms or conditions of this Agreement with anyone, except their attorney, spouse and/or accountant, or if compelled to testify by a subpoena or Court Order. In the event that Plaintiff discloses this Agreement or any of its terms or conditions to his spouse, attorney, and/or accountant, it shall be their duty to advise said individual(s) of the confidential nature of this Agreement; and direct them not to disclose, publicize, or discuss any of the terms or conditions of this Agreement with anyone else. Moreover, Plaintiff agrees that a breach of this Agreement will result in irreparable and

continuing damage, for which there will be no adequate remedy at law. In the event of a breach of the confidentiality and non-disparagement provisions of this Agreement by either Plaintiff, the aggrieved Defendant party in such event shall immediately be entitled to pursue any and all remedies they may have against the breaching party in any court of competent jurisdiction by specific performance, injunction, damages, or such other remedies and relief as may be available, regardless of any contrary provision of this Agreement. Additionally, due to the difficulty of measuring damages in the event of a breach, the Parties agree that, in the event of a breach after the settlement payment is made, the breaching party, shall owe the aggrieved party liquidated damages in the amount of One Thousand Five Hundred Dollars ($1,500.00) per proven breach. The Parties both understand and agree that this Paragraph is a material provision of this Agreement and that any breach of this Paragraph shall be a material breach of this Agreement, and that an aggrieved party would be irreparably harmed by violation of this provision.

15. If Defendants fail to timely pay per the settlement agreement, the Plaintiff shall be entitled to a Final Judgment against Defendants for the full amount of the settlement. Prior to seeking such Final Judgment, Plaintiff's counsel shall email defense counsel a notice of the default, and Defendants shall have 5 business days to cure the breach from receipt of that email.

16. Plaintiff hereby acknowledges that prior to executing this Agreement, he was advised in writing and was given sufficient time to consider the Agreement. Plaintiff acknowledges that he entered into and signed this Agreement knowingly, voluntarily, freely, of their own volition and with such consultation with counsel as deemed appropriate.

17. This Agreement may be signed in counterparts, and fax or scan copies shall be considered the same as an original for all purposes.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the dates set forth below.

Translated by:

*Rosuelinda thimogene*
Rose Melinda Thimogene

*Gisnet Thimogene*
**GISNET THIMOGENE**

Date: 7/20/2020

_____
**SHELLY POWERS, Individually, and on behalf of JC BAKESHOP, INC.**

Date:_____

11

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the dates set forth below.

_____
**GISNET THIMOGENE**

Date:_____

*/s/ Shelly Powers*
_____
**SHELLY POWERS, Individually, and on behalf of JC BAKESHOP, INC.**

Date: 7-20-2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:   1:20cv22182

GISNET THIMOGENE,

    Plaintiff,

vs.

JC BAKESHOP, INC. and
SHELLY A. POWERS,

    Defendants.

---

### VERIFIED STATEMENT OF ATTORNEY JEFFREY P. GALE

---

1. I am seeking approval of a fee in the amount of $2,500.00. I have logged 19.1 hours on the case. This calculates to an hourly rate of **$130.89**. (My time log is attached.)

2. The fee was entirely contingent.

3. My law firm, Jeffrey P. Gale, P.A., incurred costs in the amount of $500.00. (A statement showing costs is attached.)

4. I have been licensed to practice law since 1985. I have never been disciplined.

5. The customary hourly rate in FLSA cases for lawyers with similar experience exceeds $350.00.

6. The FLSA issues in the case were not novel. However, the case was complicated by two unusual factors. Upon information and belief, Covid-19 negatively impacted Defendant JC Bakeshop, Inc.'s financial situation, challenging its continued

1

survival and ability to pay any judgment entered against it. Neither Defendant maintained FLSA insurance. The other impactful factor is that the Plaintiff had a simultaneous ongoing state workers' compensation against Defendant JC Bakeshop, Inc. I was/am also handling that case for him. He wanted to leave his job with Defendant JC Bakeshop, Inc., but needed money in reserve while he searched for another job. By settling both cases at once, he would have a sufficient amount of money to satisfy these needs. I managed to successfully settle both cases on the same day. As a condition of settling either case, he was required to resign his employment. (This is standard procedure in State of Florida workers' compensation cases.) On the day both cases settled, he stopped working for Defendant JC Bakehouse, Inc. Thankfully, Plaintiff, a hard-working family man, quickly found another job.

**Under penalties of perjury, I declare that I have read the foregoing document and that the facts stated in it are true.**

_/s/ Jeffrey P. Gale_
JEFFREY P. GALE
Florida Bar No.: 471992

Date: 7-20-2020

2

**GISNET THIMOGENE -- FLSA**

| DATE | DESCRIPTION | TIME |
|---|---|---|
| 10-Oct-19 | Initial office conference | 1 |
| 10-Oct-19 | FLSA -- Legal research overtime wage law (FLSA) re exempt employees | 0.8 |
| 5-Nov-19 | Review file; instruct legal assistant to set office conference with client | 0.2 |
| 19-Dec-19 | Office conference with claimant and his brother to discuss details of FLSA | 1 |
| 23-Jan-20 | Office confernce with claimant | 0.6 |
| 8-Apr-20 | Organize paychecks and prepare a spreadsheet | 1 |
| 10-Apr-20 | Prepare Complaint and legal research | 1.8 |
| 16-Apr-20 | Proofread Complaint, instruct legal assistant to do the same then file and serve | 0.2 |
| 24-Apr-20 | Review Complaint with legal assistant before filing; review workers' compensation insurance carrier's response to Claimant's First Request for Production with regard to wage records | 0.7 |
| 23-May-20 | Work with legal assistant to properly file the Complaint | 0.3 |
| 3-Jun-20 | Review court order re Statement of Claim; prepare Statement of Claim | 1.5 |
| 5-Jun-20 | Discuss/review Statement of Claim and court order re same before filing | 0.2 |
| 8-Jun-20 | Review email from defense attorney and respond; enter contact information | 0.1 |
| 8-Jun-20 | Pc defense attorney Cody German; prepare notes to file; pc office to schedule telephone conference with client and his brother (Interpreter) | 0.3 |
| 8-Jun-20 | Pc claimant and his daughter; prepare notes | 1 |
| 9-Jun-20 | Responded to Attorney German's settlement offer | 0.5 |
| 9-Jun-20 | Review Attorney German's response; review Answer and Affirmative Defenses; prepare response to Attorney German's email | 1 |
| 10-Jun-20 | Office conference with claimant to review Homeland Security Employee Verification form given to him today by the employer; discuss status of settlement talks | 0.3 |
| 11-Jun-20 | Prepare Plaintiff's Notice of Compliance with Court Order | 0.2 |
| 11-Jun-20 | Legal research re replying to Affirmative Defenses | 1 |
| 12-Jun-20 | Email exchange with Attorney German re settlement | 0.2 |
| 19-Jun-20 | Email from Attorney German; attempt to reach WC Attorney; email response to German | 0.2 |
| 22-Jun-20 | Pc claimant (2x); prepare notes | 0.3 |
| 23-Jun-20 | Email from Attorney German; prepare response | 0.3 |
| 24-Jun-20 | Pc workers' compensation attorney (trying to accomplish a global settlement); prepare and send counter-demand with detailed breakdown to Attorney German | 0.4 |
| 24-Jun-20 | Email to Attorney German seeking clarification; review response | 0.2 |
| 25-Jun-20 | Perform settlement calculations; pc claimant; email Attorney German | 0.5 |
| 25-Jun-20 | Settlement communications with Attorney German | 0.5 |
| 26-Jun-20 | Telephone settlement conferenc with claimant | 0.3 |
| 26-Jun-20 | Office conference with claimant | 0.3 |
| 30-Jun-20 | Prepare and file Notice of Dismissal; review Dismissal Order and submission of settlement papers Order | 0.2 |
| 1-Jul-20 | Discuss settlement papers with legal assistant; email to Attorney German about settlement papers | 0.1 |
| 3-Jul-20 | Review and modify Settlement Agreement; prepare Motion to Approve; email both to Attorney German to review | 1.5 |
| 6-Jul-20 | Final review of settlement papers for signatures by parties | 0.4 |
| | | **19.1** |

**JEFFREY P. GALE, P.A.**
**COST STATEMENT**

Re:   **GISNET THIMOGENE v. JC BAKESHOP and SHELLY POWERS**
      <u>**USDC Case No.: 1:20cv22157 – Overtime Wages Case**</u>

COSTS INCURRED:

| | | | |
|---|---|---|---|
| ---------- | --------- | Copies 175 @ .35..................................................61.25 | |
| 05/23/20 | cc | USDC – filing fees................................................400.00 | |
| 06/10/20 | 12065 | Lightning Legal – service of Summons and Complaint on Defendants ...................................<u>100.00</u> | |
| | | TOTAL COSTS:............................................$561.25* .....-550.00 | |

*Jeffrey P. Gale, P.A. has agreed to accept $550.00 as reimbursement for costs